## BAYARD COAL & COKE CO. v. MITCHELL et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1919.)

### No. 1669.

MINES AND MINERALS ☞55(7)—SALE OF RESIDUE OF ADDITION—MINERAL RIGHTS RESERVED IN PRIOR DEED.

Considering together contract to convey to lumber operator all the residue of the tract of land, called P. addition, it to contain 850 to 950 acres and to be defined by plat prepared by M. from a survey to be made by him, and deed pursuant thereto of all those pieces of land constituting the residue of the tract called P. addition, which said residue is intended to include all of the said tract not heretofore conveyed, and which by survey made by M. contains 878 acres of land, more or less, there was no intention to convey the minerals reserved by a prior deed to another of 100 acres in the addition, not included in the survey and plat made by M.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by the Bayard Coal & Coke Company against John T. Mitchell and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Charles C. Wallace, of Baltimore, Md. (Robert R. Carman, of Baltimore, Md., and Edward F. Colladay, of Washington, D. C., on the brief), for plaintiff in error.

Albert A. Doub, of Cumberland, Md., for defendants in error.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

PRITCHARD, Circuit Judge. This was an action of ejectment instituted by the plaintiff in error against the defendants in error, in the District Court of the United States for the Maryland district, to recover the minerals and mineral rights in what are known as "military lots Nos. 1308 and 1370," such lots constituting a part of the tract of land in Garrett county, Md., known as "Addition to Paradise." A jury trial was waived, and the case was heard before the District Judge, who made certain findings of fact and conclusions of law upon which he entered a judgment in favor of the defendants. The case comes here on writ of error.

In this opinion, reference will be made to plaintiff in error as plaintiff, and the defendants in error as defendants, such being the relative positions of the parties in the court below. The facts are substantially as follows:

Military lots Nos. 1308 and 1370 are two of the numerous lots, containing 50 acres each, situated in Garrett county, Md., which were al-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lotted to soldiers of the Revolution for military services. They became a part of a resurvey, known as "the Addition to Paradise," by patent of the state of Maryland, dated June 11, 1831, containing 1,472 acres, and which on June 4, 1869, was conveyed to Josias Pennington, along with other tracts of land. In 1876 William C. Pennington, trustee under the will of Josias Pennington, deceased, conveyed to Lewis Nydegger the surface of military lot 1370 and reserved the coal and mineral rights, and on the 4th day of January, 1877, he conveyed the surface of military lot 1308 to William J. Wilson, also reserving the coal and mineral rights.

Besides, some other parts of the "Addition to Paradise" were either conveyed away or abandoned by the estate of Josias Pennington, because they were claimed adversely. On the 21st day of September, 1888, the estate of Josias Pennington, of which William C. Pennington was trustee under his will, entered into an agreement for the sale to William Whitmer of "all the residue of the tract of land called 'Addition to Paradise,' the said tract to contain 850 to 950 acres of land and to be defined by a plat prepared by John T. Mitchell, lately County Surveyor of Garrett county." The agreement further provided:

"The cost of the survey heretofore made in connection with this negotiation and of all further surveys that may be made by said Mitchell are to be paid by the two parties hereto equally."

Mr. Mitchell made a survey and a plat of the tract of land to be conveyed under this agreement for both parties, and on the 23d day of February, 1892, William C. Pennington, trustee, conveyed to William Whitmer—

"all those pieces and parcels of land, military lots and tracts, constituting the residue of the 'Addition to Paradise,' * * * which said residue is intended to include all of the said tract so acquired and not heretofore conveyed by said Josias Pennington, nor by said trustee, and which by a survey thereof specially made in accordance with the terms of said agreement by John T. Mitchell, late county surveyor of Garrett county, contains 898 acres of land more or less."

William Whitmer, the grantee in this deed, who was a lumber operator, and not a coal operator, and wanted to buy lumber, and not coal, was present at the survey with Mr. Mitchell, and saw the boundaries as run and fixed, before the preparation and delivery of this deed.

On January 24, 1893, William Whitmer and wife conveyed to the Bayard Coal & Coke Company all the coal and other minerals underlying all those tracts of land and military lots and tracts constituting the residue of the tract called "Addition to Paradise," being the same land which was conveyed by William C. Pennington, trustee, in the deed aforementioned, and containing 898 acres, and in the same deed conveyed other tracts of coal, minerals and mining property.

Subsequently Adrian Hughes, the substituted trustee of Josias Pennington, reported to the court the sale of the coal under the military lots Nos. 1308 and 1370 to John T. Mitchell, and on the 30th day of March, 1917, by his deed conveyed the coal to Mitchell, after the sale had been duly ratified by the court. The defendants, before pleading to the declaration, filed a disclaimer of all right, title and interest in

the surface of military lots Nos. 1308 and 1370, except such easements or rights as are reasonably necessary to the mining of the coal, but the disclaimer was not to affect their rights to the coal underlying the lots, and then pleaded the general issue plea.

In determining the real issue involved in this controversy, we must consider the contract and the deed together, in order to reach a correct conclusion as to the amount of land Pennington intended to convey. Plaintiff insists that the deed is broad enough to include the minerals underlying tracts Nos. 1308 and 1370, in which, as we have stated, the title of the surface was conveyed to Nydegger and Wilson under the will of Josias Pennington, deceased.

The learned judge, who tried the case in the court below, stated in clear and concise terms the issue involved, as follows:

"The controversy is one that we can settle without looking at a plat, the facts being admitted that 1308 and 1370 were part of Additions to Paradise and owned by the Pennington estate at one time, and the real question here is a very definite one. They had 898 acres, or some such matter, that they owned without any qualifications or any limitation, and they owned the mineral rights under another 100 acres. They made an agreement with the predecessors in title of the plaintiff by which they agreed to sell all the balance of the land that they had, and they said it was somewhere from 850 to 950 acres, and they were going to have a survey made. They had the survey made, and it turned out that it was 898½ acres, or some such matter, and they got a conveyance of that 898 acres. Something like 10 years later it turned out, or it was for the first time realized, that there were these coal rights under another 100 acres which belonged to Pennington estate at the time it made this conveyance. I have not seen the correspondence as yet, but apparently the plaintiffs or their predecessors in title wrote Mr. Pennington, 'Didn't you intend to convey to us everything that you had left in Paradise, including the mineral rights?'

"And he writes back, 'Yes, I did so intend,' and subsequently he gets other information, and thinks it over, or does something, and he writes subsequent letters which modify that statement. How much it modifies the statement I am not yet advised. Then nothing more seems to have been done for a period of some 12 to 15 years, and after his death the trustee proceeds to sell the mineral rights to the defendant. Now, this is all the case I know of."

The plaintiff offered in evidence a letter from William C. Pennington to W. McCullough Brown, which plaintiff insists tends to establish the fact that Pennington, at the time he sold defendant the property, intended not only to convey the land embraced in the survey, but also the minerals underlying the tracts or lots in question. The letter is in the following language:

"In the sale of 'all the residue of the tract of Addition to Paradise' to William Whitmer & Sons, I probably did not recall the reserved mineral rights in 1308, 1370, and 1385; but my intention certainly must have been to convey any and all interest in the tract, vested in me, and the language used conveys that intention in full. I therefore make no claim to them."

The plaintiff insists that this indicates that Pennington intended to include the minerals underlying these two tracts. It appears that early in 1903, some time after the foregoing letter was written, the treasurer of the appellant company requested Mr. Pennington to sign a paper which purported to be a confirmatory deed. Thereupon Mr. Pennington consulted with Mr. Mitchell upon the theory that he was acting as trustee for others, as well as in his own behalf, and he felt bound to pro-

tect their interest. Mr. Mitchell, in reply to this letter, explained that Mr. Whitmer had not bought the minerals under the military lots, and that the survey and plats were not intended to include, nor did they include, the military lots; that in making such survey he included only the portion of tract covered with timber upon the area owned in fee. In other words, that the survey was not intended to include any land other than the lands embraced therein. The following extracts from the letter of Mr. Mitchell are pertinent to the contention of the defendants.

"When Mr. Whitmer purchased this property, he did so more especially for its timber value than anything else. Coal at that time was not considered by him in the deal, and was an after consideration when he had taken off all the timber.

"The sale to him was not intended to cover anything but the timber, and when I made the survey under the terms of the agreement I included only that part of the tract covered by the timber, and the acreage reported was based upon the timber area only. In making the survey, I found the lines of the original tract interfered some with Mr. John G. Steyer and Mr. Isaac I. Thompson, both of whom had portions of the tract under fence and cultivation; and all this was excluded by Mr. Whitmer's request.

"The minerals underlying lot No. 1370 were not included in the sale to Mr. Whitmer. The deed from you to Mr. Whitmer contains in substance these words, 'all the residue of Addition to Paradise,' which said residue is intended to include all of said tract acquired and not heretofore conveyed by said Josias Pennington, nor by said trustee, and which by a survey specially made in accordance with the terms of said agreement by John T. Mitchell, etc., contains 898 acres more or less."

"The language of the deed is broad enough to cover all, if it were not limited by a reference to the survey of the property actually intended to be covered. Mr. Whitmer never claimed any more than what was included within the lines of survey, and on March 7, 1892, he executed three deeds, conveying the surface of all this land to John G. Steyer, John T. Steyer, and William J. Wilson, in accordance with the lines of the survey, and the acreage. On January 25, 1893, he conveyed the minerals under the same land to the Bayard Coal & Coke Company, containing 898 acres, more or less.

"When the surface was sold, I prepared all the papers for the parties, and made the divisions of the property between them, as had been agreed with Mr. Whitmer and the purchasers, and since then I have had occasion to retrace some of the lines.

"The Bayard Coal & Coke Company undoubtedly get all the title in the mineral rights acquired by Mr. Whitmer from you, and I can see no necessity for the confirmatory deed from you. It seems to me that the only question to be determined is what the deed from you to Whitmer conveyed; if a proper construction of it conveys the minerals under lot No. 1370 then the coal company already has the title. As the deed to Mr. Whitmer refers to the conveyance of land only, it occurs to me that mineral rights should be specially mentioned in order to convey them.

"I just found to-day all the correspondence with you and Mr. Whitmer in reference to the making of the deed and payment of the balance of the purchase money, and no reference is made anywhere to the minerals under lot No. 1370. From the facts as I know them, it is my opinion that the Bayard Coal & Coke Company have no claim on the minerals under lot 1370."

The contract upon which this deed is based provides that—

"The said tract to contain from 850 to 950 acres to be defined by a plot prepared by John T. Mitchell. * * * "

The grantor prepared the deed himself, and we think his language made his intention perfectly clear. He conveyed:

"*All* those pieces and parcels of land, military lots and tracts, *constituting the residue of the tract* * * * called 'Addition to Paradise.'"

Not being content with the foregoing description, he continued to make clear that which otherwise might have been in doubt by employing the following language:

"*Which said residue is intended to include all of the said tract so acquired and not heretofore conveyed by said Josias Pennington, nor by said trustee,* and which by a survey thereof specially made in accordance with the terms of said agreement, by John T. Mitchell, late county surveyor of said Garrett county, contains 898 acres of land, more or less." (Italics ours.)

If Mr. Pennington had intended to convey to the plaintiff that part of the residue of the estate consisting of the mineral interest theretofore reserved, it would have been an easy matter to have provided in the contract that, in addition to surveying the lands specifically mentioned in the contract to be surveyed, the underlying minerals of the two tracts in question should also be included as part of the survey. The fact that he failed to do so shows conclusively that Mr. Pennington never contemplated conveying the minerals underlying these tracts as part of the residue of the estate.

When we consider the contract and deed together, as we have stated, we find the same to be in perfect harmony with what was obviously the intention of the grantor at the time the deed was executed, to wit: To convey only such land as was described and definitely located by the survey. This is true, independent of any parol evidence; nevertheless it should be borne in mind that it was shown by oral testimony that, at the time these lands were purchased, it was the purpose of the plaintiff to purchase timber lands, and that the grantor only intended to convey such lands is clearly shown by the survey in question.

We do not deem it necessary to enter into an extended discussion of the question, which is within narrow limits, further than to say that we are of the opinion that the findings of fact of the court below and conclusions of law were correct; therefore it follows that the judgment of the court below should be

Affirmed.